1  Gary R. Selvin, State Bar No. 112030
   Melissa A. Dubbs, State Bar No. 163650
2  SELVIN WRAITH HALMAN LLP
   505 14th Street, Suite 1200
3  Oakland, CA 94612
   Telephone:    (510) 874-1811
4  Facsimile:    (510) 465-8976
   E-mail:  gselvin@selvinwraith.com
5          mdubbs@selvinwraith.com

6  Attorneys for Plaintiff
   Navigators Specialty Insurance Company

7

8            IN THE UNITED STATES DISTRICT COURT

9      FOR THE EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

10

11  NAVIGATORS SPECIALTY INSURANCE         **Case No.: 2:09-cv-03115-GEB-DAD**
    COMPANY,
12                                         **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES IN SUPPORT OF**
13              Plaintiff,                 **NAVIGATORS SPECIALTY INSURANCE**
                                           **COMPANY'S COMBINED REPLY TO**
14        v.                               **DEFENDANT HOWARD DRYWALL, INC**
                                           **AND J P HEINTZ & COMPANY INC**
15  HOWARD DRYWALL, INC.; J P HEINTZ &     **OPPOSITIONS TO PLAINTIFF'S MOTION**
    COMPANY INC.; and JUAN MANUEL          **FOR SUMMARY JUDGMENT**
16  LOPEZ,

17              Defendants.                Date:        March 8, 2010
                                           Time:        9:00 a.m.
18                                         Courtroom:   10
                                           Assigned To: Judge Garland E. Burrell, Jr.
19
                                           Complaint Filed:  November 9, 2009
20

21

22

23

24

25

26

27

28

---

**Plaintiff's Reply Memorandum of Points & Authorities to Defendants' Opposition to Plaintiffs' MSJ**
**Case No.: 2:09-cv-03115-GEB-DAD**

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ...................................................................................................1

II.   LEGAL ARGUMENT...........................................................................................2

    A.   The Declaration Page of the Navigators' Policy Identifies the Absolute Employers' Liability Exclusion Endorsement as becoming effective on December 1, 2006. ....................................................................................2

    B.   The Absolute Employers' Liability Exclusion is Conspicuous, Plain and Clear....................................................................................................4

    C.   The Navigators' Policy Clearly States that it is a "New" Policy...................................7

    D.   Defendants' Subjective Expectations of Coverage Are Irrelevant. ...............................9

    E.   California Civil Code §1642 does not Apply to Insurance Contracts ........................12

    F.   Defendants' Cannot Create Coverage *via* Waiver or Estoppel....................................13

    G.   Good Cause Does Not Exist Under Rule 56(f) to Continue the Hearing. ...................14

III.   CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Accord, Loehr v. Great Republic Ins. Co.*
(1990) 226 Cal.App.3d 727 ..................................................................................13

*Aerojet-General Corp. v. Transport Indemnity Co.*
(1997) 17 Cal.4th 38, 50, fn. 4 ...............................................................................5

*Aetna v. Richmond*
(1977) 76 Cal.App.3d 645, 652-653 .......................................................................16

*AIU Ins. Co. v. Superior Court*
(1990) 51 Cal.3d 807, 822 ................................................................................11, 20

*American Cas. Co. of Reading, PA v. General Star Indemnity Co.*
(2005) 125 Cal.App.4th 1510 .................................................................................15

*American Nurses Association v. State of Illinois*
(7th Cir. 1986) 783 F.2d 716, 729 .........................................................................17

*Bank of the West*
2 Cal.4th at 1264 ...................................................................................10, 11, 14

*Brant v. Calif. Dairies, Inc.*
(1935) 4 Cal.2d 128 ................................................................................................12

*Chase v. Blue Cross of Calif.*
(1996) 42 Cal.App.4th 1142, 1151 .........................................................................16

*Continental Cas. Co. v. Phoenix Const. Co.*
(1956) 46 Cal.2d 423, 431 .......................................................................................5

*Cooper Companies v. Transcontinental Ins. Co.*
(1995) 31 Cal.App.4th 1094 ..............................................................................12, 14

*Eddy v. Sharp*
(1988) 199 Cal.App.3d 858, 864 ............................................................................13

*Estate of Murphy*
(1978) 82 Cal.App.3d 304, 309-310 .........................................................................5

*Farm Air Flying Service v. Southeastern Aviation Ins.*
(1988) 206 Cal.App.3d 637 ....................................................................................14

*Feurzeig v. Insurance Co. of the West*
(1997) 59 Cal.App.4th 1276, 1283 ...........................................................................6

*Fisher v. Metropolitan Life Insurance Co.*
(5th Cir. 1990) 895 F.2d 1073 ................................................................................18

*General Reinsurance Corp. v. St. Jude Hospital*
(2003) 107 Cal.App.4th 1097 .................................................................................11

ii

Page(s)

*Gibson v. Government Employees Ins. Co.*
   (1984) 162 Cal.App.3d 441, 452 ...................................................................12

*Golden Eagle Ins. Co. v. Foremost Ins. Co.*
   (1993) 20 Cal.App.4th 1372, 1384 ...................................................................8

*Gossett v. Du-Ra-Kel Corp.*
   (5th Cir. 1978) 569 F.2d 869, 873 ...................................................................18

*Great Western Drywall Inc. v. Interstate Fire & Cas.*
   (2008) 161 Cal.App.4th 1033, 1043 .................................................................14

*Heath v. Kettenhofen*
   (1965) 236 Cal.App.2d 197 .............................................................................19

*Jaurequi v. Mid-Century Ins. Co.*
   (1991) 1 Cal.App.4th 1544, 1548 .....................................................................5

*Julian v. Hartford Underwriters Ins. Co.*
   (2005) 35 Cal.4th 747 .......................................................................................6

*Mid-Century Ins. Co. v. Haynes*
   (1990) 218 Cal.App.3d 737, 742 .......................................................................5

*Mission Nat'l Ins. Co. v. Coachella Valley Water Dist.*
   (1989) 210 Cal.App.3d 484, 497 .......................................................................4

*Netto v. Amtrak*
   (5th Cir. 1989) 863 F.2d 1210, 1216 ................................................................18

*New America Shipbuilders, Inc. v. United States*
   (Fed.Cir. 1989) 871 F.2d 1077, 1081...............................................................17

*Norkin v. United States Fire Ins. Co.,*
   (1965) 237 Cal. App. 2d 435 ............................................................................19

*Palub v. Hartford Underwriters Ins. Co.*
   (2001) 92 Cal.App.4th 645, 652 ........................................................................6

*Paul Kadair, Inc. v. Sony Corp. of America*
   (5th Cir. 1983) 694 F.2d 1017, 1029-30 ...........................................................18

*Ponder v. Blue Cross of So. Calif.*
   (1983) 145 Cal.App.3d 709, 723-725 .................................................................7

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*
   (1986) 41 Cal.3d 903, 912 ...............................................................................10

*Reflectone, Inc. v. Farrand Optical Co., Inc.*
   (11th Cir. 1989) 862 F.2d 841, 843-44).............................................................17

*Roug v. Ohio Security Ins. Co.*
   (1986) 182 Cal.App.3d 1030 .......................................................................11, 20

iii

**Page(s)**

*Sandgren v. Fire Ins. Exchange*
  (1976) 64 Cal.App.3d 634, 637 ...................................................................................8

*Schrillo Co. et al v. Hartford Acc & Indem. Co.*
  (1986) 181 Cal.App.3d 766 ......................................................................................13

*Securities and Exchange Commission v. Spence & Green Chemical Co.*
  (1981) 612 F.2d 896, 901 (5th Cir. 1980), cert. denied, 449 U.S. 1082, 101 S.Ct.
  866, 66 L.Ed.2d 806....................................................................................................18

*St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*
  (2002) 101 Cal.App.4th 1038 ...................................................................................15

*Supervalu, Inc. v. Wexford Underwriting Managers Inc.*
  (2009) 175 Cal.App.4th 64 .......................................................................................17

*Thompson v. Mercury Casualty Co.*
  (2000) 84 Cal.App.4th 90, 95 .....................................................................................5

*Tompkins v. California Ins. Grou*
   (2002) 2002 WL 187085, *4 .......................................................................................9

*Troost v. Estate of DeBoer*
  (1984) 155 Cal.App.3d 289 ......................................................................................13

*Truck Ins. Exchange v. Wilshire Ins. Co.*
  (1970) 8 Cal.App.3d 553 ..........................................................................................19

*Vons Companies, Inc. v. United States Fire Ins. Co.*
  (2000) 78 Cal.App.4th 52, 57-58 .............................................................................15

*Waller v. Truck Ins. Exch., Inc.*
  (1995) 11 Cal.4th 1, 31-32 .......................................................................................16

*Weir v. Anaconda Co.*
  773 F.2d 1073, 1081 (10th Cir. 1985) .....................................................................17

*Willmar Poultry Co. v. Morton-Norwich Products, Inc.*
  (1976) 520 F.2d 289, 297 (8th Cir. 1975), cert. denied, 424 U.S. 915, 96 S.Ct.
  1116, 47 L.Ed.2d 320.................................................................................................18

*Winet v. Price*
  (1992) 4 Cal.App.4th 1159 .......................................................................................12

*Wolf Machinery Co. v. Insurance Co. of North America*
  (1982) 133 Cal.App.3d 324, 329 .............................................................................11

*Zito v. Fireman's Fund Ins. Co.*
  (1973) 36 Cal.App.3d 277, 282 ..................................................................................8

**Statutes**

California Insurance Code
  §660(e) .........................................................................................................................7

**Plaintiff's Reply Memorandum of Points & Authorities to Defendants' Opposition to Plaintiffs' MSJ**
**Case No.: 2:09-cv-03115-GEB-DAD**

**Page(s)**

Civil Code §1642 .................................................................................................................12

Civil Code §2332 .................................................................................................................11

Civil Code §3399 .................................................................................................................15

**Other Authorities**

*DiMugno & Glad, Cal. Ins. Law Handbook* (2000)
    §4.01.............................................................................................................................11

The Rutter Group, Hon. H. Walter Croskey, *et al.*, (2008) *California Practice Guide:
    Insurance Litigation*
    §§ 3:33-3:34....................................................................................................................4

The Rutter Group, Hon. H. Walter Croskey, *et al.,* (2008) *California Practice Guide:
    Insurance Litigation*
    §3:93................................................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiff's Reply Memorandum of Points & Authorities to Defendants' Opposition to Plaintiffs' MSJ**
**Case No.: 2:09-cv-03115-GEB-DAD**

## I.   INTRODUCTION

This is a simple and straightforward summary judgment motion addressing one issue of law: did the unambiguous exclusionary language in the absolute employee exclusion bar the duty to defend.  Defendants do not contest the rather elementary factual underpinnings: Howard Drywall's (the named insured) employee sustained injuries, and sued the putative additional insured, J.P. Heintz, who in turn sued named insured Howard Drywall for contractual indemnity.  This claim squarely falls within the exclusion for bodily injury to any employee of any insured.  The defendants' nearly identical oppositions to the motion for summary judgment are telling in several respects.  First, they provide no legal authorities to support their argument; nor do they contest the plain and unambiguous language in the absolute employee exclusion.  Instead of focusing upon the contractual language, they detour into case law concerning contractual indemnity, an issue entirely irrelevant to the present motion. Next, both defendants' repeatedly and mistakenly attempt to characterize the Navigators policy at issue as a "renewal," while at the same time admitting this was the first policy that plaintiff Navigators issued to Howard Drywall.  (Docket #16, Howard Drywall's Opposition, page 4:10-13).  *See also*, the policy's declaration pages, stating this was a "New" policy.  (Docket 10-7, page 5)  As such, plaintiff had no way to know the prior coverage, nor any obligation to notify defendants of any changes from the prior coverage or of the conspicuous Absolute Employers' Liability Exclusion Endorsement.

Defendants' additional arguments dealing with when the endorsement was added are without merit.  The Declaration pages to the Navigators' policy identify Endorsement # ANF-168 (the Absolute Employers' Liability Exclusion Endorsement) as part of the policy upon inception "at time of issue."  (See, Doc. 10-7, page 13).

Finally, additional discovery concentrating on the affirmative defenses of waiver, estoppel and fraud would be futile and the court should reject defendants' Rule 56(f) request.  While the doctrines of waiver and estoppel may be used to enforce the terms and conditions of an insurance policy, they cannot be used to eliminate an exclusion.  Howard Drywall had clear notice of the at-issue endorsement at the time it applied to Navigators for insurance.  The Application of Insurance signed by both Mr. Howard and his broker plainly identifies Endorsement ANF-168 – Amendment-

1   Employers Liability Exclusion – Bodily Injury to Employee-Absolute.  Accordingly, plaintiff

2   respectfully requests that this Court grant its motion for summary judgment.

3                                       **II.    LEGAL ARGUMENT**

4   **A.      The Declaration Page of the Navigators' Policy Identifies the Absolute Employers'
            Liability Exclusion Endorsement as becoming effective on December 1, 2006.**

5

6           Defendants argue that the Absolute Employers' Liability Exclusion is ambiguous because

7   Navigators did not put them on notice as to when the "exclusion was allegedly added to the policy."

8   But this is a specious and baseless argument.

9           Here, the Navigators' policy became effective on December 1, 2006.  The Absolute

10  Employers' Liability Exclusion Endorsement, which is a part of that policy and is attached thereto,

11  likewise became effective on December 1, 2006.  Both the Commercial Lines Common Policy

12  Declarations and the Commercial General Liability Coverage Part Declarations in the Navigators'

13  policy confirm and inform Howard Drywall that the forms and endorsements attached became

14  effective on December 1, 2006.  *See*, Doc. 10-7, pages 5 and 13 of 59, *O'Hara Declaration*, Exhibit

15  A, at 00004 and 000012, where the Common Policy Declarations clearly state:

16                                **COMMERCIAL LINES POLICY**
                                **COMMON POLICY DECLARATIONS**
17                              **NAVIGATORS SPECIALTY INS. CO.**

18                              6 INTERNATIONAL DRIVE--SUITE 100
                                        RYE BROOK, NY 10573
19                                       TEL: 212\244 – 2333

20          NEW_____                                      Policy No. 04-00006013

21          Renewal of Number

22          * * *

23          Policy Period: From:  12 -01- 2006 to 12-01-2007 at 12:01 A.M. Standard Time.

24          * * *

25          IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL
            THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE
26          INSURANCE STATED IN THIS POLICY.

27          * * *

28          THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY
            CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART

                                                    2
**Plaintiff's Reply Memorandum of Points & Authorities to Defendants' Opposition to Plaintiffs' MSJ**
                                            **Case No.: 2:09-cv-03115-GEB-DAD**

COVERAGE FORM(S) AND FORMS AND **ENDORSEMENTS, IF ANY**, ISSUED TO FORM A PART THEREOF, **COMPLETE THE ABOVE NUMBERED POLICY**.

The Common Policy Declarations tell Howard Drywall that the Endorsements included in the

package policy, form part of, and complete Policy No. 04-00006013 which became effective on

December 1, 2006.  And, next the General Liability Coverage Part Declarations list the endorsements

which make up part of the CGL terms, conditions and exclusions.  The Declaration page informs the

insured that the endorsements become a part of the policy at time of issue, or 12-01-2006:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy No. 04- 00006013                              Effective Date: 12-01-2006

* * *

---

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

***Forms and endorsements applying to this Coverage Part and a part of this policy at time of issue***: ANF -- BT 158 (06\06), ANF ES043 (05\06), ANF -- ES130 (06\98), ANF -- ES 180 (05\06), ANF 032 (07\05), ANF 161 (03\97), ANF 164 (07\05), **ANF 168 (07\99)**, ANF 170 (04\00), ANF 172 (01\01), ANF 181 (11\03), ANF -- ES 162 (07\05), ANF -- ES 175 (03\02), CG 0001 (12\04), CG0300 (01\96), CG 2134 NR (01\87), CG 2147 (07\98), CG 2154 A (07\05), CG 2169 (01\02), CG 2243 (11\85), CG 2426 (07\04), IL0021 (07\02), CG 0067 (03\05), CG 2503 (11\85).  (Emphasis Added)

---

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD. . . . (emphasis added).

Doc. 10-7, page 13 of 59, *O'Hara Declaration*, Exhibit A, at 00012.  Consequently,

defendants' claims of the "absence of evidence of the date of the amendment to the policy and the

date it purportedly became effective," are wholly without merit.  The form at issue, ANF 168, was in

the policy from inception.

The policy provides when coverage may be changed.  Section B to the Conditions reads:

B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issue by us and made a part of this policy.

3

*O'Hara Declaration* to Plaintiffs' Motion for Summary Judgment, Exhibit A, at p. Policy00007.  So, for example, when Howard Drywall needed to add additional insureds and locations to the Navigator's policy after it had incepted, Howard Drywall notified Navigators through its broker, Wasserman & Associates.  On receipt of such notice, Navigators issued new additional insured endorsements listing the name of the additional insured, the location and the effective dates of coverage.  *See*, for example, *O'Hara Declaration*, Exhibit B[1].

**B.    The Absolute Employers' Liability Exclusion is Conspicuous, Plain and Clear**

The employers' liability exclusion in the Navigators' policy is part of a pre-printed standard commercial general liability form developed by the Insurance Services Office or ISO.  *See*, The Rutter Group, Hon. H. Walter Croskey, *et al.*, (2008) *California Practice Guide: Insurance Litigation* at §§ [3:33-3:34].  The standard form commercial general liability (CGL) policy drafted by the ISO is used by the vast majority of liability carriers.  *Id*.  As Navigators did here, CGL carriers routinely modify one or more provisions of the pre-printed ISO CGL form through the use of endorsements so that the policy is tailored to, and accurately reflect the risks presented by each individual insured. *See*, *Mission Nat'l Ins. Co. v. Coachella Valley Water Dist*. (1989) 210 Cal.App.3d 484, 497 [Endorsements may provide wide sweeping changes to the nature and extent of the insurance coverage.]  As a matter of law, the language of an endorsement overrides the language in other parts of the policy in case of any conflict.  *Aerojet-General Corp. v. Transport Indemnity Co*. (1997) 17 Cal.4th 38, 50, fn. 4.  "[I]f there is a conflict in meaning between an endorsement and the body of the

---

[1]  Although SSUF # 9 accurately describes the additional insured endorsement issued to Howard Drywall naming J P Heintz as an additional insured at the St. Anna's Greek Orthodox Church location, plaintiff inadvertently attached the wrong additional insured endorsement as its supporting evidence.  Upon notice *via* defendants' oppositions, plaintiff filed a Notice of Errata, attaching the correct endorsement.  *See* Docket Entry # 22.  Defendants, in opposition, do not dispute that J P Heintz was an additional insured for this location, but noted and made much of the fact that the effective dates of coverage under the attached endorsements were 6/25/07 to 12/01/07, or after the policy's inception date of December 1, 2006 and after Mr. Lopez' December 29, 2006 injury.  Both defendants failed to note that the endorsements attached were for different locations.  If, in fact, the correct St. Anna's Church endorsement had an effective coverage date from 6/25/07 to 12/01/07, then the lead argument for non-coverage would be that the policy was never triggered, *i.e.*, the December 29, 2006 injury occurred *before* the additional insured endorsement became effective.  Inasmuch as the parties do not dispute that J P Heintz was an additional insured at the St Anna's location at the time of Mr. Lopez' injury, plaintiff's inadvertent attachment of the wrong endorsement is harmless.

4

policy, the endorsement controls." *Continental Cas. Co. v. Phoenix Const*. Co. (1956) 46 Cal.2d 423,

431. "This is particularly the case where the conflicting language is contained in a pre-printed form

in the policy. The specially prepared portions of a contract control over those which are printed or

taken from a form." *Id.* Here, there is no conflict between the main body of the policy and the

Absolute Employers' Liability Exclusion Endorsement because the endorsement replaces the original

employers' liability exclusion.

An endorsement may limit coverage or liability. *Aerojet-General Corp., supra,* 17 Cal.4th at

50, fn. 4; *Estate of Murphy* (1978) 82 Cal.App.3d 304, 309-310. At the same time, however, as with

any clause limiting coverage, an endorsement must be placed conspicuously in the contract and its

language must be plain and unambiguous. *Thompson v. Mercury Casualty Co*. (2000) 84

Cal.App.4th 90, 95; *Mid-Century Ins. Co. v. Haynes* (1990) 218 Cal.App.3d 737, 742. Whether an

endorsement limiting coverage is "conspicuous, plain and clear" is a question of law. *Jaurequi v.*

*Mid-Century Ins. Co*. (1991) 1 Cal.App.4th 1544, 1548.

The contract between Navigators and Howard Drywall simply reflects the freedom of the

parties to contract, and the right of an insurance company to limit its risks by endorsing an absolute

employee exclusion. Here, defendants cite no authority and make no argument that the *language* of

the endorsement is itself unclear or not plain. Rather, they argue that the endorsement is ambiguous

because it is not conspicuous, placed as it is at page 25 of a 59 page policy and because they were

provided no notice that the original exception to the exclusion was "expressly deleted." But, it

explicitly stated the endorsement modifies the general liability coverage. That the amendatory

endorsement is on page 25 of a 59 page policy does not make it inconspicuous.

An insurance policy limitation is inconspicuous if it is not "positioned and printed in a form

which adequately attracts the readers' attention to the limitation." *Feurzeig v. Insurance Co. of the*

*West* (1997) 59 Cal.App.4th 1276, 1283. "Conspicuous" means so written, displayed or presented

that a reasonable person ought to have noticed it. *See*, for example, *Palub v. Hartford Underwriters*

*Ins. Co.* (2001) 92 Cal.App.4th 645, 652 (disapproved on other grounds in *Julian v. Hartford*

*Underwriters Ins. Co*. (2005) 35 Cal.4th 747 (although the exclusion appeared in an endorsement and

not in the main body of the policy, it was sufficiently "conspicuous, plain and clear" because (1) the

1  endorsement was only a page long; (2) it was titled "Amendatory Endorsement," with the

2  subheading, in somewhat smaller type, but all capital letters "Specifically Excepted Perils"; (4) the

3  included heading and subheadings were in bold print; and (5) the cover sheet to the policy

4  admonished the policy holders to "read your policy carefully," and specified that "Amendatory

5  endorsements may be attached to your policy to modify these provisions or provide you with

6  additional coverage(s)."

7         In the present action, the quality, size and format of text of the one page amendatory

8  endorsement, clearly attracts the readers' attention.  The first line of the endorsement announces

9  unambiguously in bold and capitalized words that, "**THIS ENDORSEMENT CHANGES THE**

10  **POLICY.  PLEASE READ IT CAREFULLY."**  Thus, the insured is immediately informed of a

11  change in coverage.  Directly beneath this admonition, is the main heading, bolded and in the same

12  size font and capital letters as the warning and reads: **AMENDMENT – EMPLOYER'S**

13  **LIABILITY EXCLUSION.**  This title sufficiently cautions the reasonable insured that the change in

14  coverage relates to the employers' liability exclusion.  To emphasize that the amendment deals with

15  this exclusion, the endorsement adds language in the next line and in the same font which reads:

16  **(EXCLUSION – BODILY INJURY TO EMPLOYEES – ABSOLUTE).**  The full title of the

17  exclusion gives the insured fair notice that this amendment to the employers' liability exclusion

18  relates to the employee's bodily injury, and that the exclusion is "Absolute."  Moreover, the language

19  of the exclusion itself is set out clearly on a full single page and is double spaced, in easily readable

20  text and font.  In contrast, the original exclusion, found at page Policy 000031, is part of a two

21  column page list of exclusions, each of which is single spaced.  Consequently, any argument that the

22  exclusion is not conspicuous is without merit.  The absolute employee exclusion is profoundly

23  conspicuous; more so than the ISO preprinted exclusion.

24         Not only must the policy be "conspicuous", it must be "plain and clear."  An exclusion is

25  plain and clear if it is couched in common words ("words which are part of the working vocabulary

26  of average laypersons") and phrased in a logical manner ("the unusual arrangement of common

27  words can render an exclusionary clause incomprehensible") *Ponder v. Blue Cross of So. Calif.*

28  (1983) 145 Cal.App.3d 709, 723-725.

The Amended Employers' Liability Exclusion-Absolute is plain and clear.  It does not use any legal or medical terms.  In concise and easy to understand language, the insured is advised that **all** claims for "bodily injury" by **any** employee of **any** insured, is precluded.  The fact that there is no exception to the exclusion emphasizes the all-encompassing nature of the limitation.  Because it is plain and clear, it must be enforced by its terms.

## C.      The Navigators' Policy Clearly States that it is a "New" Policy

Asserting that the policy issued by Navigators was a "renewal," Defendants additionally argue that Navigators had a duty to provide Howard Drywall with "special notice" that its coverage had been reduced or changed from the prior North American Capacity policy Insurance Company.  Absent such notice, Howard Drywall argues it was entitled to the same coverage it had under its prior policy.[2]  Neither Howard Drywall nor J P Heintz cites any authority for their extraordinary argument of "renewed" coverage and it is without merit.

In the insurance context, a "renewal" or "to renew" means to continue coverage with the insurer which originally issued the policy for an additional policy period upon expiration of the current policy period.  *See,* for example, California Insurance Code §660(e), definition of "renewal" under automobile policies.  A renewed insurance policy is chronologically new but perpetuates the terms and conditions of the original policy unless the parties to the original contract provide otherwise.  *Sandgren v. Fire Ins. Exchange* (1976) 64 Cal.App.3d 634, 637.  (FIE originally issued a homeowners policy to the Sandgrens' in 1964 which was continually renewed.  The Sandgrens made a claim under that policy after a fire in 1973).  To effect a renewal of an insurance policy, there must be both an offer by the insurance carrier to renew ***its*** policy and an acceptance by the policyholder.  *Golden Eagle Ins. Co. v. Foremost Ins. Co*. (1993) 20 Cal.App.4th 1372, 1384.  It is a long-standing general principle applicable to insurance policies that an insurance company cannot change the terms of its renewed policy without first notifying the insured.  *Zito v. Fireman's Fund Ins. Co*. (1973) 36 Cal.App.3d 277, 282 (automobile policy).

---

[2] This argument, unbuttressed by any legal support, of course makes little practical sense.  It would require an insurance company to get all of the prior policies, no matter who issued them, to compare them, and to explain them to the applicant, highlighting the differences in the policies.

7

1    In the present case, the Navigators' policy was not a "renewal," but rather a new policy. The

2    Commercial Lines Common Policy Declaration page clearly identifies the policy at issue as "New."

3    *See*, Doc. 10-7, page 5 of 59, *O'Hara Declaration* in support of Plaintiff's Motion for Summary

4    Judgment, Exhibit A, at 00004, upper left hand corner, stating "NEW."

5    Defendants admit that Howard Drywall's insurance needs were placed with a new carrier.

6    *See*, *Declaration of Richard Howard* made in support of Howard Drywall's Opposition to Motion for

7    Summary Judgment at p. 2:6-8 ("Unbeknownst to me at the time, the "renewal" policy . . . was

8    written by a company I had previously not done business with: Navigators Specialty Insurance

9    Company") and *Declaration of Worthington*, Exhibit 2, Deposition of Jeffrey Einhorn, Howard

10   Drywall's broker, at p. 32:1-6 (Q: So at renewal time, you placed the business with a different carrier.

11   A: That's correct). Thus, the policy issued by Navigators was not a "renewal" policy. And because it

12   was a "new" policy there was not, nor could there have been, any offer by Navigators to renew under

13   the same terms and conditions as were previously in place.

14   Because the Navigators' policy was new and not a renewal of an existing policy, defendants

15   had no basis for presuming that the new and the old policies were identical. The fact that the letter

16   received by Mr. Howard from his broker described the policy as a "renewal," does not alter this

17   conclusion. Whatever significance that label may have had to the processing of the policy by Howard

18   Drywall's own broker, the label does not appear on any of the policy documents issued by

19   Navigators. Nothing in the Navigator policy documents themselves would have entitled a reasonable

20   person to assume that the coverage under that policy was identical to the expiring North American

21   Capacity policy. Navigators was obligated to place and did place the limitations on coverage

22   conspicuously in its contract and stated those limitations in clear and plain language, it was not

23   required to provide additional notice comparing its coverage with that in the prior North American

24   Capacity policies. *See*, for example, *Tompkins v. California Ins. Group* (2002) 2002 WL 187085, *4.

25   Finally, defendants argue, without citation to any case law or other authority, that the cases

26   relied upon by Navigators to support its argument that the exclusion is "absolute," are

27   distinguishable, because those cases applied to "co-insureds" rather than to "additional insureds."

28   But this argument is a distinction without any substance. J P Heintz is an additional insured by virtue

**Plaintiff's Reply Memorandum of Points & Authorities to Defendants' Opposition to Plaintiffs' MSJ**

**Case No.: 2:09-cv-03115-GEB-DAD**

of the St. Anna's Greek Orthodox Church endorsement, effective from December 1, 2006 to December 1, 2007.  The function of such endorsements is to identify other persons covered by the policy.  But the coverage afforded under an additional insured endorsement is not greater than the coverage afforded to named insureds or co-insureds.  In fact, as is the case here, the coverage provided under additional insured endorsements issued to subcontractors is *limited* to the conduct of the named insured's business.  Additional insured status does not provide an additional insured greater coverage than that provided to a co-insured.  The Rutter Group, Hon. H. Walter Croskey, *et al.,* (2008) *California Practice Guide: Insurance Litigation* at § [3:93].  Moreover, the policy excludes coverage if the injured plaintiff was any insured's employee.  It is undisputed he was the Named Insured's employee.  Defendants' argument is a red herring.

Because the amended Absolute Employers' Liability exclusion is conspicuous, plain, clear and unequivocal, the only thing defendants can "reasonably expect" is the coverage afforded by the plain language of the policy.  *Bank of the West*, *supra*, 2 Cal.4th at 1264.  The exclusion precludes coverage for both the underlying *Lopez* complaint and the *J P Heintz* cross complaint.

**D.  Defendants' Subjective Expectations of Coverage Are Irrelevant.**

Defendants do not argue that there is a separate and reasonable interpretation of the absolute employee exclusion other than that proffered by the plaintiff, and supported by abundant case law.  Rather, they argue that since they each had a reasonable expectation that the Navigators' policy would be consistent with prior policies issued to Howard Drywall, the Endorsement must be ambiguous.  But an insurance policy provision is only ambiguous when it is capable of two or more constructions, both of which are reasonable.  Whether the language in a contract is ambiguous is a question of law.  *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912.  And language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.  *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265.

Insurance contracts are contracts to which the ordinary rules of contractual interpretation apply.  *See*, *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.  Under California law, an insurance company is entitled to limit its policy coverage as long as the limitation conforms to the

9

1   law and is not contrary to public policy; when it has done so, the plain language of limitations must

2   be respected.  *Allstate Ins. Co. v. Thompson*, *supra*, 206 Cal.App.3d at pp. 939-940; *See also*

3   *Lumberman's Mut. Cas. Co. v. Wyman* (1976) 64 Cal.App.3d 252, 259.  When the terms of an

4   insurance policy are plain and explicit, the court will not indulge in forced or strained construction to

5   impose liability.  *Roug v. Ohio Security Ins. Co.* (1986) 182 Cal.App.3d 1030.  The insured's

6   "objectively reasonable expectations" may only be considered to resolve an ambiguous policy

7   provision.  Such expectations cannot be used to *create* an ambiguity where none exists.  *General*

8   *Reinsurance Corp. v. St. Jude Hospital* (2003) 107 Cal.App.4th 1097.  As noted above, ambiguity

9   must be shown from the policy language itself, read in context, the circumstances of the case, and

10  common sense.  If no ambiguity can be demonstrated by applying these factors, any contrary

11  expectation of the insured could not, by definition be reasonable.  And whether a party has a

12  reasonable expectation of coverage is an issue of law, not one of fact.  *Wolf Machinery Co. v.*

13  *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 329.  "If an insured could not

14  reasonably expect coverage, the principle requiring construction in favor of coverage where more

15  than one reasonable interpretation is possible does not apply."  *Cooper Companies v.*

16  *Transcontinental Ins. Co.* (1995) 31 Cal.App.4th 1094.

17          Here, the declaration of Richard Howard, President and CEO of Howard Drywall asserts

18  nothing more than a *subjective* and *undisclosed* expectation of coverage.  Neither his declaration nor

19  other evidence presented in opposition to Navigators' Motion, disclose that any representations were

20  made by anyone authorized to speak on Navigators' behalf could have fostered any such subjective

21  expectation of renewed coverage by Navigators', a complete stranger to the prior contract.  There is

22  no evidence presented that Navigators, or its underwriting agent, Builders' and Tradesmens'

23  Insurance Services, provided or were requested to provide, any coverage advice in connection with

24  the new Navigators' policy.  Moreover, an insurer owes no independent duty to determine whether

25  the policy applied for is adequate to meet the applicant's economic needs or to recommend additional

26  coverages.  *Gibson v. Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 452.

27  Accordingly, Navigators cannot be held to the defendants' secret and undisclosed expectations of

28  coverage.  As the court in *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166, fn. 3 wrote:

1   Although Winet argues there were disputed "facts," the only evidence which was in
2   "conflict" was Winet's testimony as to what he subjectively understood and intended
    the release to encompass. While this "subjective intent" evidence was conflicting, it
3   was not *competent* extrinsic evidence, because evidence of the undisclosed subjective
    intent of the parties is irrelevant to determining the meaning of contractual language. .
4   . It is the outward expression of the agreement, rather than a party's unexpressed
    intention, which the court will enforce.

5   *See also*, *Schrillo Co. et al v. Hartford Acc & Indem. Co.* (1986) 181 Cal.App.3d 766.

6          According to Mr. Howard's declaration and the deposition of Jeffrey Einhorn, his broker at

7   Wasserman & Associates, they apparently discussed coverage and decided to change carriers to

8   Navigators.  In that capacity, California case law is clear that Wasserman & Associates acted as the

9   broker for Howard Drywall and was not the agent of Navigators'.  It is uncontroverted that where an

10  insurance agent is the agent for several companies and selects the company with which to place the

11  insurance or insures with one of them according to the directions of the insured, the insurance agent is

12  the agent of the insured.  *Eddy v. Sharp* (1988) 199 Cal.App.3d 858, 864.  *Accord, Loehr v. Great*

13  *Republic Ins. Co.* (1990) 226 Cal.App.3d 727.  *See, DiMugno & Glad, Cal. Ins. Law Handbook*

14  § 4.01 (2000).  This is exactly what took place here.  If Mr. Howard is dissatisfied with the coverage

15  procured by his broker, his remedies are against the broker.  *See, Troost v. Estate of DeBoer* (1984)

16  155 Cal.App.3d 289 (agent was the insured's agent for purposes of procuring the requested

17  coverages; thus, the insurer was not responsible for a gap in coverage created by the agent's error).

18         Consequently, if, in fact, Howard Drywall was mistaken as to the types of coverage set forth

19  in the policy, the mistake was not the fault of Navigators; the policy was negotiated on Howard

20  Drywall's behalf by Wasserman & Associates.  Mr. Einhorn discussed with Mr. Howard the types of

21  coverage Howard sought, and thereafter placed coverage with Navigators.  If Howard Drywall

22  misunderstood or was misled as to the coverages it purchased, the person responsible for that

23  misunderstanding was its broker.  *See, Farm Air Flying Service v. Southeastern Aviation Ins.* (1988)

24  206 Cal.App.3d 637 and Civil Code, §2332 [an agent's knowledge is imputed to his principal];

25  3 Couch on Insurance 2d (Rev.ed. 1997) §25:27, pp. 315-316 [same].  Likewise, if there was

26  confusion about the meaning of the Absolute Employees' Liability Exclusion, or its effect, those

27  persons or entities responsible for such confusion were Einhorn and Wasserman & Associates.

28         "If an insured could not reasonably expect coverage, the principle requiring construction in

---

11

1  favor of coverage where more than one reasonable interpretation is possible does not apply." *Cooper*

2  *Companies v. Transcontinental Ins. Co.* (1995) 31 Cal.App.4th 1094.  No reasonable basis exists for

3  suggesting a reasonable insured, reading the policy, would believe he would have coverage for an

4  injury to the named insured's employee where the policy expressly excludes bodily injuries to any

5  insured's employee.

6  **E.     California Civil Code §1642 does not Apply to Insurance Contracts**

7          Defendants argue that under California Civil Code §1642, the court must interpret the terms

8  and conditions of the Navigators' policy in conjunction with the J P Heintz/Howard Drywall

9  Subcontract Agreement, a contract to which Navigators is a stranger.  Case law is clear that an

10  insurance policy is an entirely separate contract and its enforcement is not contingent upon the terms

11  and conditions of the subcontract agreement.  *Great Western Drywall Inc. v. Interstate Fire & Cas*.

12  (2008) 161 Cal.App.4th 1033, 1043.  ("We are, however, interpreting the CGL policy's coverage

13  provisions, which is an entirely separate contract from the subcontract. . .  The policy language

14  controls, not the subcontract language.").

15          Defendants rely upon *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines*

16  *Ins. Co*. (2002) 101 Cal.App.4th 1038 to argue that this court must interpret the Insurance policy in

17  conjunction with the subcontract agreement.  But as that same court recognized in *American Cas. Co.*

18  *of Reading, PA v. General Star Indemnity Co.* (2005) 125 Cal.App.4th 1510, its decision in *St Paul*

19  was limited to the facts of that case, which involved different language and different facts than those

20  involved in *American Cas. Co, supra*:

21          Unfortunately for American's argument, however, *St. Paul* involved different policy
        language and ***we held only*** that we could consider the underlying indemnity contract
22          between the insured parties in order to resolve an ambiguity in the language of the
        "additional insured" endorsement.

23  *Id*. at 1528.

24

25          In *St. Paul, supra*, the court first determined that under the specific facts of the case, the

26  additional insured endorsement was ambiguous.  The court then looked to the subcontract agreement

27  to resolve that ambiguity and determined that there was no coverage.

28          When the employee filed suit, the general contractor sought coverage under an
        additional insured endorsement in the subcontractor's policy. That endorsement stated

12

that coverage would be provided "'only with respect to liability arising out of'" the subcontractor's "'ongoing operations performed for'" the general contractor. (*Id*. at p. 1043, 124 Cal.Rptr.2d 818, italics omitted.)  In order to resolve the ambiguity of this policy language we looked at the terms of the underlying and contemporaneous subcontract and its indemnity provisions as part of the general circumstances. (Id. at p. 1058, 124 Cal.Rptr.2d 818.)  We concluded that the facts did not support coverage under this clause

*Id*.

Here, the basis for the defendants' claim of ambiguity is the defendants' ignorance of its terms and not that the language itself is ambiguous.  But defendants' complaints regarding the exclusion are without merit.  As the court stated in *Vons Companies, Inc. v. United States Fire Ins. Co.* (2000) 78 Cal.App.4th 52, 57-58:

Policy provisions are ambiguous only if they are capable of two or more reasonable constructions.  We will not adopt a strained or absurd interpretation to create an ambiguity where none exists.  The policy terms must be construed in the context of the whole policy and the circumstances of the case and cannot be deemed ambiguous in the abstract.

Because the language of the endorsement is conspicuous, plain and clear, and is not capable of two or more reasonable constructions, it controls and defendants' arguments fail as a matter of law.

**F.   Defendants' Cannot Create Coverage *via* Waiver or Estoppel.**

Defendants argue that because they have asserted affirmative defenses of waiver and estoppel, they are entitled to conduct additional discovery regarding the contract's formation.  But neither of these doctrines is applicable in this case.

Estoppel refers to conduct by the insurer that reasonably causes an insured to rely to his or her detriment.  *Chase v. Blue Cross of Calif.* (1996) 42 Cal.App.4th 1142, 1151.  As discussed above, because (1) Howard Drywall admits that it used a broker and did not deal directly with Navigators; (2) the policy issued was "new" and not a "renewal"; and (3) the policy is clear and unambiguous, there can be no detrimental reliance based on *Navigators* conduct.

Waiver refers to an insurer's intentional relinquishment of a known right after knowledge of those facts.  *Waller v. Truck Ins. Exch., Inc.* (1995) 11 Cal.4th 1, 31-32.  Although plaintiff waited six months before declining J P Heintz' tender of the *Lopez* action, its inaction cannot create a waiver.  Similarly, there can be no waiver where Navigators' agreed to defend Howard Drywall subject to a complete reservation of rights.  *Id.*

Moreover, neither of these doctrines are grounds for extending coverage to risks not covered or expressly excluded by the policy.  That is, while waiver and estoppel may be used to enforce the terms and conditions of the policy, they cannot be used to create coverage where coverage does not exist.  *See, Aetna v. Richmond* (1977) 76 Cal.App.3d 645, 652-653.  "There is a definite distinction between the waiver of a right to declare a forfeiture, to cancel or rescind based upon some breach of a condition of the policy on the one hand, and the extension of coverage on the other."  *Supervalu, Inc. v. Wexford Underwriting Managers Inc*. (2009) 175 Cal.App.4th 64.  Accordingly, additional discovery will not reveal any basis for waiver and estoppel.

**G.     Good Cause Does Not Exist Under Rule 56(f) to Continue the Hearing.**

Rule 56(f) provides: Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56 does not require that any discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy.  *New America Shipbuilders, Inc. v. United States* (Fed.Cir. 1989) 871 F.2d 1077, 1081 ; *Reflectone, Inc. v. Farrand Optical Co., Inc*. (11th Cir. 1989) 862 F.2d 841, 843-44 ; *American Nurses Association v. State of Illinois* (7th Cir. 1986) 783 F.2d 716, 729 ; *Weir v. Anaconda Co.* 773 F.2d 1073, 1081 (10th Cir. 1985).  A plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.  *Paul Kadair, Inc. v. Sony Corp. of America* (5th Cir. 1983) 694 F.2d 1017, 1029-30  .  *See, Fisher v. Metropolitan Life Insurance Co*. (5th Cir. 1990) 895 F.2d 1073  and *Netto v. Amtrak* (5th Cir. 1989) 863 F.2d 1210, 1216.

To obtain a Rule 56(f) continuance, the nonmovant must present specific facts explaining his inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."  *Securities and Exchange Commission v. Spence & Green Chemical Co.* (1981) 612 F.2d 896, 901 (5th Cir. 1980), cert. denied,

1   449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806  (quoting *Willmar Poultry Co. v. Morton-Norwich*

2   *Products, Inc.* (1976) 520 F.2d 289, 297 (8th Cir. 1975), cert. denied, 424 U.S. 915, 96 S.Ct. 1116, 47

3   L.Ed.2d 320(1976) ).  The nonmovant may not simply rely on vague assertions that discovery will

4   produce needed, but unspecified, facts.  *Gossett v. Du-Ra-Kel Corp.* (5th Cir. 1978) 569 F.2d 869,

5   873 .

6       The defendants suggest they need discovery into the plaintiffs' knowledge of the contract

7   between J.P. Heintz and Howard Drywall.  Whatever <u>that</u> contract between J.P. Heintz and Howard

8   Drywall may have said, that is not the issue in this case.  The only issue in this litigation is the

9   contractual rights, duties and obligations under the Navigators policy issued to Howard Drywall.

10  Next, the defendants claim that they need to know how and why the endorsement was added.  The

11  policy itself states that the endorsement was part of the policy from inception.  Why it was added is

12  irrelevant.  Their final argument loosely touches upon fraud or mutual mistake, suggesting a right to

13  reform the policy.

14      Reformation is a statutory creature that authorizes a court to revise a written contract under

15  certain limited circumstances.

16      Civil Code §3399 states:

17      When, through fraud or a mutual mistake of the parties, or a mistake of one party,
        which the other at the time knew or suspected, a written contract does not truly express
18      the intention of the parties, it may be revised on the application of a party aggrieved,
        so as to express that intention, so far as it can be done without prejudice to rights
19      acquired by third persons, in good faith and for value.

20      The court may reform a written instrument to make it fully express the intention of the parties

21  only if the contract fails to express their true intentions.  *Truck Ins. Exchange v. Wilshire Ins. Co.*

22  (1970) 8 Cal.App.3d 553.  However, reformation is improper if the court seeks to make a new

23  contract for parties.  The court also cannot reform a contract to conform to terms which one party

24  understood, unless it also appears that other party had same understanding.  *Heath v. Kettenhofen*

25  (1965) 236 Cal.App.2d 197.  For there to be a right to reformation, there must be a single intention

26  entertained by both parties.  Here, the policy included an absolute employee exclusion.  It was part of

27  the contract from the inception.  The exclusion was in the policy declarations page.  Discovery is

28  unnecessary as the insurance contract cannot be rewritten and there is no basis for reforming the

1   policy.

2       In order to state a claim for fraud, defendants must allege and prove, "(a) misrepresentation

3   (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c)

4   intent to defraud, *i.e.,* to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Norkin v.*

5   *United States Fire Ins. Co.* (1965) 237 Cal.App.2d 435, 437.  Defendants cannot allege and prove any

6   basis to assert fraud against Navigators and additional discovery on this topic would be futile.  The

7   Insurance Application submitted to Navigators' underwriters, Builders' and Tradesmens' Insurance

8   Services, on November 28, 2006 was signed by both Howard Drywall and its agent, Wasserman &

9   Associates.  The Application unmistakably states that coverage is to be bound effective December 1,

10  2006 per the application.  The Application also clearly lists Endorsement ANF-168, Amendment-

11  Employers Liability Exclusion – Bodily Injury to Employee-Absolute, directly beneath the signatures

12  of Mr. Howard and his broker, Angela Anderson.  Declaration of Penny Mozell made in support of

13  Navigators' Reply Brief, Exhibit A, at page 7.

14      Plaintiffs do not allege any contact with Navigators, let alone any misrepresentation of

15  material fact.  Because there was no representation, let alone any misrepresentation on the part of

16  Navigators, additional discovery will not reveal any basis to maintain an affirmative defense of fraud.

17                          **III.    CONCLUSION**

18      The defendants have no legal basis to contest the enforceability of the absolute employee

19  exclusion.  Insurance contracts are contracts to which the ordinary rules of contractual interpretation

20  apply.  *See, AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.  Under California law, an

21  insurance company is entitled to limit its policy coverage as long as the limitation conforms to the

22  law and is not contrary to public policy; when it has done so, the plain language of limitations must

23  be respected.  (*Allstate Ins. Co. v. Thompson, supra*, 206 Cal.App.3d at pp. 939-940; *See also,*

24  *Lumberman's Mut. Cas. Co. v. Wyman* (1976) 64 Cal.App.3d 252, 259; 134 Cal.Rptr. 318.)  When

25  the terms of an insurance policy are plain and explicit, the court will not indulge in forced or strained

26  construction to impose liability.  (*Roug v. Ohio Security Ins. Co.* (1986) 182 Cal.App. 3d 1030.

27      The language of the Absolute Employers' Liability Exclusion Endorsement unambiguously

28  bars coverage to the defendants.  Discovery cannot rescue their opposition through discovery.  As a

**Plaintiff's Reply Memorandum of Points & Authorities to Defendants' Opposition to Plaintiffs' MSJ**
**Case No.: 2:09-cv-03115-GEB-DAD**

1   matter of law, the policy terms absolutely bar coverage for injury to any employee of any insured.

2   Plaintiff respectfully requests summary judgment in its favor.

3

4   Dated:  March 1, 2010                    SELVIN WRAITH HALMAN LLP

5

6                                           By:  /s/  Gary R. Selvin
                                                 Gary R. Selvin
7                                                Melissa A. Dubbs
                                                 Attorneys for Plaintiff
8                                                Navigators Specialty Insurance Company

9   73943.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Reply Memorandum of Points & Authorities to Defendants' Opposition to Plaintiffs' MSJ**

**Case No.: 2:09-cv-03115-GEB-DAD**