IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


NAVIGATORS SPECIALTY INSURANCE )
COMPANY, )
                              )
              Plaintiff,      )     2:09-cv-03115-GEB-DAD
                              )
         v.                   )     ORDER GRANTING PLAINTIFF'S
                              )     MOTION FOR SUMMARY JUDGMENT
HOWARD DRYWALL, INC.; J P HEINTZ & )
COMPANY INC.; and JUAN MANUEL )
LOPEZ,                        )
                              )
              Defendants.     )
_____)

        On February 5, 2010, plaintiff Navigators Speciality

Insurance Company ("Navigators") filed a motion for summary judgment

under Federal Rule of Civil Procedure 56(c) on its claim against

defendants Howard Drywall, Inc. ("Howard Drywall") and J P Heintz &

Company, Inc. ("J P Heintz").  The motion concerns whether, under a

commercial general liability insurance policy Navigators issued to

Howard Drywall, Navigators is obligated to indemnify or defend either

Howard Drywall or J P Heintz in a pending state court proceeding.

Both Howard Drywall and J P Heintz argue that Navigators' summary

judgment motion should be denied or continued to allow for additional

discovery under Federal Rule of Civil Procedure 56(f), and

alternatively, oppose the motion.  Navigators' motion was heard on

March 8, 2010.  For the reasons stated below, J P Heintz and Howard

Drywall's Rule 56(f) motion is DENIED and Navigators' motion for

summary judgment is GRANTED.

# I.  LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S., 317, 323 (1986).  If this burden is satisfied, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial."  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis omitted).  When deciding a summary judgment motion, all reasonable inferences that can be drawn from the evidence "must be drawn in favor of the non-moving party."  <u>Bryan v. McPherson</u>, --- F.3d ----, 2009 WL 5064477, at *2 (9th Cir. 2009).

Navigators requests that judicial notice be taken of two documents: 1) Lopez's complaint against J P Heintz in the <u>Lopez v. J P Heintz</u> litigation ("<u>Lopez</u>"), Case No. 34-2008-00029816, pending in the Sacramento County Superior Court; and 2) J P Heintz's cross-complaint filed against Howard Drywall in <u>Lopez</u>.  J P Heintz also requests that judicial notice be taken of an order continuing the trial date in the <u>Lopez</u> case.[1]

Under Federal Rule of Evidence 201, a district court may take judicial notice of a fact that is "not subject to reasonable dispute" because "it is either (1) generally known within the

---

[1]    J P Heintz further requests that judicial notice be taken of J P Heintz's answer to Navigators' complaint in this federal action. However, documents that are on file need not be judicially noticed to be considered.  Therefore, this portion of Howard Drywall's request is denied.  Similarly, Howard Drywall's request that judicial notice be taken of its answer to Navigators' complaint is denied for the same reason.

territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[P]roceedings in other courts, both within and [outside of] the federal judicial system, if [they] have a direct relation to matters at issue" may be judicially noticed. United States ex rel. Robinson Rancheria Citizens Council v. Boreno, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of California Superior Court decision). Since Lopez is directly related to this action, judicial notice may be taken of the three filings in that case. Therefore, both Navigators and J P Heintz's requests for judicial notice of filings in Lopez are granted.

## II. STATEMENT OF UNDISPUTED FACTS

On November 28, 2006, Builders & Tradesmen Insurance Services ("BTIS"), Navigators' underwriter, received an application for insurance prepared and submitted by Wasserman & Associates ("Wasserman") on behalf of its client, Howard Drywall. (Mozell Decl. ¶ 4.) Navigators then issued commercial general liability insurance to Howard Drywall under policy number 04-00006013 (the "Policy"), which was effective from December 1, 2006 to December 1, 2007. (Pl.'s Response to Defs.' SUF ¶ 7; O'Hara Decl. Ex. A.)[2] Richard Drywall,

---

[2]	J P Heintz objects to the admission of insurance policy number 04-00006013 issued by Navigators to Howard Drywall, which is attached as Exhibit A to O'Hara's declaration, arguing "it is inadmissible hearsay," "lacks proper authentication" and "lack of personal knowledge." (J P Heintz's Objections to Pl.'s Evidence 1:23-24.) Specifically, J P Heintz argues "there are no facts stated in the O'Hara declaration establishing that O'Hara has knowledge when the subject policy was amended to include an absolute exclusion for bodily injury to employees . . . ." (Id. 1:24-27.) J P Heintz's objections are overruled. O'Hara declares she has "personal knowledge regarding the issuance of the Navigators insurance policy at issue in this litigation" and that "Exhibit A is a true and correct copy of policy number 04-00006012

(continued...)

the President and Chief Executive Officer of Howard Drywall, did not receive a copy of the Policy from Wasserman until May 14, 2007. (Howard Decl. ¶ 6.)

On December 29, 2006, Juan Manuel Lopez, an employee of Howard Drywall's, went to a church to perform work for Howard Drywall. (Pl.'s Response to Defs.' Separate Statement of Undisputed Facts ("SUF") ¶¶ 1-2.) Shortly after his arrival at the church, Lopez fell down an elevator shaft. (Id. ¶ 3.)

Prior to Lopez's accident, in June 2000, Howard Drywall, as a subcontractor, had entered into a contract with general contractor J P Heintz, under which Howard Drywall was "obligated to defend and fully indemnify [J P Heintz] . . . against all claims, lawsuits, and damages brought by any person against [J P Heintz] . . . arising out of [Howard Drywall's] work at the subject job site." (J P Heintz Additional Statement of Facts ¶ 3) (emphasis in original.)[3] The contract between Howard Drywall and J P Heintz also required Howard Drywall to obtain a comprehensive general liability insurance policy covering bodily injury claims and naming J P Heintz as an additional

---

[2](...continued)
issued by Navigators to Howard Drywall, Inc." (O'Hara Decl. ¶¶ 1-2.) These averments are sufficient to authenticate and admit the insurance policy. Further, the insurance policy is "excluded from the definition of hearsay and is admissible evidence because it is a legally operative document that defines the rights and liabilities of the parties in this case." Stuart v. UNUM Life Ins. Co. of Am., 217 F.3d 1145, 1154 (9th Cir. 2000) (citations and quotations omitted).
Further, Howard Drywall and J P Heintz agree that a commercial general liability policy was issued. However, they dispute and deny that the employer's liability exclusion endorsement, which excludes J P Heintz from coverage under the Policy, was in effect. This argument is addressed below, when considering the validity of the endorsement.

[3] Navigators objects to the admission of this fact as irrelevant. Navigators' objection, however, is overruled.

insured.  (Id. ¶ 5.)  This subcontract agreement was unmodified and in effect at the time of Lopez's accident at the church in December 2006. (Id. ¶ 4.)

Lopez filed a complaint in the Sacramento County Superior Court on December 19, 2008, alleging a negligence claim against J P Heintz based upon the December 2006 accident.  (Pl.'s Response to Defs.' SUF ¶ 5.)  J P Heintz then filed a cross-complaint against Howard Drywall on February 27, 2009, alleging a contractual indemnity claim.  (Id. ¶ 6.)  In that claim, J P Heintz alleges "Cross-Defendant Howard Drywall, Inc. is contractually obligated to defend and indemnify [J P Heintz] . . . pursuant to a written contract entered into before [Lopez's] accident . . . ."  (Navigators' Request for Judicial Notice ("RJN") Ex. B.)

On November 9, 2009, Navigators filed a complaint in this federal court, seeking "a judicial declaration that it owes no duty to defend or indemnify either defendant [J P Heintz] . . . or defendant [Howard Drywall] . . . under the insurance policy Navigators issued to [Howard Drywall], regarding a bodily lawsuit brought in Sacramento County Superior Court by Howard Drywall's injured employee, [Lopez] . . ., because the Navigators policy excludes coverage for any claim arising out of bodily injury to any insured's employee."  (Compl. 1:18-24.)

### III.  J P Heintz and Howard Drywall's Rule 56(f) Motion

J P Heintz argues Navigators' summary judgment motion should be denied under Federal Rule of Civil Procedure 56(f) ("Rule 56(f)") to allow it time to conduct discovery concerning whether Navigators waived, or is estopped, from denying coverage under the Policy. Howard Drywall joins in J P Heintz's Rule 56(f) motion.  At oral

argument, J P Heintz's counsel clarified that defendants only seek discovery into what Navigators or its underwriter knew or should have known about Howard Drywall's insurance needs in light of the fact that Navigators had previously insured Howard Drywall.  J P Heintz's counsel argued that an exhibit attached to Navigators' reply brief revealed that Navigators had insured Howard Drywall from 2002 to 2003.  Specifically, J P Heintz seeks to discover the underwriting file as well as depose BTIS's declarant, Penny Mozell.  J P Heintz's counsel further argued that this discovery is relevant to whether J P Heintz and Howard Drywall are entitled to reform the Policy to provide coverage to J P Heintz.

Navigators counters that defendants have not satisfied Rule 56(f)'s requirements since defendants cannot create coverage through either the doctrines of waiver or estoppel.  At oral argument, Navigators' counsel further opined that discovery into what Navigators' or its underwriter knew about Howard Drywall's insurance needs is irrelevant since the Policy reflects the parties' bargained-for contract.

Rule 56(f) states: "If a party opposing [a summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."  Fed. R. Civ. P. 56(f).  "To prevail under Rule [56(f)], [a party] opposing a motion for summary judgment must make (a) a timely application (b) which specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.

The burden is on the party seeking additional discovery to proffer
sufficient facts to show that the evidence sought exists, and that it
would prevent summary judgment." <u>Blough v. Holland Realty, Inc.</u>, 574
F.3d 1084, 1091 n.5 (9th Cir. 2009).

"The rule is well established that the doctrines of implied
waiver and of estoppel based upon the conduct or action of the
insurer, are not available to bring within the coverage of a policy
risks not covered by its terms, or risk expressly excluded therefrom,
and the application of the doctrines in this respect is therefore to
be distinguished from the waiver of, or estoppel to assert, grounds of
forfeiture." <u>Supervalu, Inc. v. Wexford Underwriting Managers, Inc.</u>,
175 Cal. App. 4th 64, 77 (2009). It is undisputed that if the
endorsement at issue in this litigation is valid, the terms of the
Policy do not provide coverage to either J P Heintz or Howard Drywall
for Lopez's bodily injury claim. Therefore, neither the doctrines of
waiver or estoppel may operate to extend coverage to Howard Drywall or
J P Heintz. Accordingly, discovery on these issues would not preclude
an award of summary judgment in Navigators' favor.

Further, defendants have not demonstrated that the discovery
they seek would establish a right to reformation of the Policy and
preclude awarding summary judgment in Navigators' favor. Under
California law, reformation "may be had when there has been a
negligent misrepresentation, mutual mistake, or a mistake, suspected
or known by the party opposing reformation, made by the party seeking
reformation." <u>Rail Servs. of Am. v. State Compensation Ins. Fund</u>, 110
Cal. App. 4th 323, 333 (2003) (citations omitted); <u>see also</u> Cal. Civ.
Code § 3399 (providing for reformation of a contract). "The purpose
of reformation is to correct a written instrument in order to

effectuate a common intention of both parties which was incorrectly reduced to writing." Alderson v. Ins. Co. of N. Am., 223 Cal. App. 3d 397, 411 (1990).

Defendants have not explained how the discovery they seek on the coverage Navigators' provided Howard Drywall four years prior to the issuance of the Policy, establishes that when the Policy was formed, there was a "common intention" shared by both Navigators and Howard Drywall to extend certain coverage under the Policy to J P Heintz. That Navigators may have previously provided certain coverage to Howard Drywall does not demonstrate that a "mistake" was made when the Policy was formed. Therefore, defendants have not shown that the discovery they see would preclude awarding summary judgment in Navigators favor. Accordingly, defendants' motion for a continuance or denial under Rule 56(f) is DENIED.

## IV. DISCUSSION

Navigators argues it is entitled to summary judgment on its claim for declaratory relief since a valid endorsement in the Policy "excludes coverage for any claim of bodily injury brought by any employee of any insured" and Lopez was an employee of Howard Drywall, an insured. (Mot. for Summ. J. 7:27-28.) Howard Drywall and J P Heintz each filed oppositions, raising nearly identical arguments. Both argue that "amendment" to the employer's liability exclusion of the Policy is inconsistent with the reasonable expectations of Howard Drywall and J P Heintz; and, there is a material question of fact as to whether or not Howard Drywall and J P Heintz had notice of the exclusion from coverage. (J P Heintz Opp'n 2-6, Howard Drywall Opp'n 4-9.)

//

## A. Applicable Principles of Insurance Contract Interpretation

An insurer's duty to defend or indemnify is clearly defined under California law:

> The duty to defend is broader than the obligation to indemnify, from which it must be distinguished. The duty to defend exists whenever an insurer ascertains facts which give rise to the <u>potential</u> of liability to indemnify. Unlike the obligation to indemnify, which is only determined when the insured's underlying liability is established, the duty to defend must be assessed at the very outset of a case . . . . Thus, when a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insured must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that the <u>claim cannot be covered</u>. In order to establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the <u>absence</u> of any such potential. In general, where there is any doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured and against the insurer.

<u>Ringler Associates Inc. v. Maryland Cas. Co.</u>, 80 Cal. App. 4th 1165, 1185-86 (2000) (citations omitted) (emphasis in original). Further, "[i]t is well settled that because the duty to defend is broader than the duty to indemnify, a determination that there is no duty to defend automatically means that there is no duty to indemnify." <u>Certain Underwriters at Lloyd's of London v. Superior Court</u>, 24 Cal. 4th 945, 961 (2001) (quotations and citations omitted). Therefore, to prevail on its summary judgment motion, Navigators must establish that the undisputed facts demonstrate that Lopez's claim "cannot be covered" under the Policy.

The principles of insurance contract interpretation are also well-settled under California law:

> Interpretation of an insurance policy is a question of law. While insurance contracts have special features, they are still contracts

to which ordinary rules of contractual interpretation apply. Thus, the mutual intention of the parties at the time the contract is formed governs interpretation. If possible, [courts] infer this intent solely from the written provisions of the insurance policy. If the policy language is clear and explicit, it governs.

When interpreting a policy provision, [courts] must give its terms their ordinary and popular sense unless used by the parties in a technical sense or a special meaning is given to them by usage. . . .

A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. The court may then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.

Palmer v. Truck Ins. Exchange, 21 Cal. 4th 1109, 1115 (1999) (quotations and citations omitted).

"Endorsements are modifications to the basic insuring forms in [an insurance] policy . . . ." Adams v. Explorer Ins. Co., 107 Cal. App. 4th 438, 450 (2003) (citation omitted); see also Haynes v. Farmers Ins. Exchange, 32 Cal. 4th 1198, 1208 (2004) (stating that "insurers may rely on endorsements to modify printed terms of a form policy"). "Endorsements on an insurance policy form part of the insurance contract, and the policy of insurance with the endorsements and riders thereon must be construed together as a whole." Adams, 107 Cal. App. 4th at 451 (quotations and citations omitted). "If there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." Aerojet-General Corp. v. Transport Indem. Co., 17 Cal. 4th 38, 50 n.4 (1997) (quotations and citation omitted). However, any endorsement that "takes away or limits

coverage reasonably expected by an insured must be conspicuous, plain and clear" to be enforceable. <u>Haynes</u>, 32 Cal. 4th at 1204. "The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." <u>Id.</u> (citations omitted).

## B. The Insurance Policy

The Policy is fifty-eight pages long and consists of three "Declarations" pages located at pages 000002, 000004 and 000012, "Common Policy Conditions," located at page 000007, a "Commercial General Liability Coverage Form" beginning on page 000030, and twenty-five endorsements and other forms placed throughout the policy. (<u>Id.</u>)

The Commercial General Liability Coverage Form constitutes the "main body" of the policy and provides the "insuring agreement," under which Navigators agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."[4] (O'Hara Decl. Ex. A. at 000030.) The Commercial General Liability Coverage Form further specifies that the "insuring agreement" "applies to 'bodily injury' . . . only if: (1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; [and] (2) The "bodily injury" . . . occurs during the policy period . . . ." (<u>Id.</u>) The Commercial General Liability Coverage Form also limits the "insuring agreement" providing for certain "exclusions" from coverage. (<u>Id.</u>) In particular, the Commercial General Liability Coverage Form provides:

---

[4] The Commercial General Liability Coverage Form is a standard form drafted by the Insurance Services Office ("ISO"), a nonprofit trade association. <u>Montrose Chemical Corp. v. Admiral Ins. Co.</u>, 10 Cal. 4th 645, 671 n.13 (1995). "Most carriers use the basic ISO forms, at least as the starting point for their general liability policies." <u>Id.</u>

**This insurance does not apply to: . . .**
 e. Employer's Liability
    **"Bodily Injury" to:**
    (1) **An "employee" of the insured** arising out of and in the course of:
     (a) Employment by the insured; or
     (b) Performing duties related to the conduct of the insured's business;
      . . .
    **This exclusion applies:**
    (1) Whether **the insured may be liable as an employer or in any other capacity**; and
    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
    This exclusion does not apply to liability assumed by the insured under an "insured contract."

(Id. at 000031) (emphasis added).

However, Form ANF-168 (07/99), titled "Amendment - Employer's Liability Exclusion," ("Employer's Liability Exclusion Endorsement") located on page 000024, states that it is an endorsement "modif[ying] insurance provided under the . . . [Commercial General Liability Coverage Part]." (Id. at 000024.) Specifically, the Employer's Liability Exclusion Endorsement provides that "Exclusion e. Employer's Liability of item 2. Exclusions, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION 1 - COVERAGES is replaced by the following:

  e. Employers Liability
    "Bodily Injury" to:
    (1) Any "employee" or "temporary worker" **of any insured** arising out of and in the course of:
     (a) Employment by any insured; or
     (b) Performing duties related to the conduct of an insured's business . . .
    This exclusion applies:
    (1) Whether **an insured** may be liable as an employer **or in any other capacity**; and
    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Id.) (emphasis added).

Form ANF-ES 160 (5/2006), the "Blanket Additional Insured Endorsement," located on page 000016, also states that it modifies the provisions of the Commercial General Liability Coverage Form. (Id. at 00016.)  Specifically, the Blanket Additional Insured Endorsement provides that "WHO IS AN INSURED (Section II) [of the Commercial General Liability Coverage Form] is amended to include as an insured the person or organization shown in the Schedule . . . ." (Id.) Navigators attached as Exhibit B to O'Hara's declaration an executed form AN-ES 160 (5/2006), listing in the "Schedule," J P Heintz and St. Anna Greek Orthodox Church. (O'Hara Decl. Ex. B, Notice of Errata, Ex. B.)[5]  This endorsement states that it is applicable to Policy Number 04-00006013, under which Howard Drywall is the named insured, and is effective December 1, 2006 through December 1, 2007. (Id.)

### C.  Validity of the Employer's Liability Exclusion Endorsement

Navigators argues the Employer's Liability Exclusion Endorsement in the Policy is valid under California law because it is conspicuous, plain and clear.  Howard Drywall and J P Heintz's do not directly challenge this assertion; rather, they argue that "[t]here was no clear and unambiguous notice to [Howard Drywall] or its additional insured J P Heintz, of any addition of an absolute employee exclusion, other than posting a one-page document in the middle of a 59-page policy." (Howard Drywall's Opp'n 7:9-12.)  At oral argument, Howard Drywall and J P Heintz's counsel only argued that Navigators' motion should be continued or denied under Rule 56(f); neither

---

[5]  Navigators attached the wrong "Exhibit B" to O'Hara's declaration.  After defendants had filed their oppositions, Navigators filed a "Notice of Errata," attaching the correct form as "Exhibit B." Neither Howard Drywall nor J P Heintz challenged the admission of this exhibit at the hearing.

addressed the underlying merits of Navigators' summary judgment motion.

An endorsement is "conspicuous" if "it will attract the reader's attention." Haynes, 32 Cal. 4th at 1204. "Courts have found coverage exclusions in policies not to be conspicuous where they were hidden, or placed on an overcrowded page that readers could easily overlook." Venoco, Inc. v. Gulf Underwriters Ins. Co., 175 Cal. App. 4th 750, 758 (2009) (quotations and citations omitted). "Conversely, an exclusionary clause in the same size print and intensity as the rest of the policy and appearing under an appropriate heading is "conspicuous as a matter of law." Haynes, 32 Cal. 4th at 1217. A conspicuous inquiry also assesses where the endorsement "actually has been positioned and printed within the policy at issue." Haynes, 32 Cal. 4th at 1209 (citation omitted). In determining conspicuousness, "[t]he policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert." Haynes, 32 Cal. 4th at 1204 (quotations and citations omitted).

In Haynes, the California Supreme Court held an "endorsement to be inconspicious where: it was listed on the policy's declarations page only by alphanumeric designation (S9064); the language in the endorsement itself was not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the fine print; one of the terms in the title was nowhere defined; and the relevant limiting language was in the least conspicuous position on the page - essentially buried." Zurich Am. Ins. v. Grand Avenue Transport, No. C 09-00197 CRB, 2010 WL

14

682530, at *4 (N.D. Cal. Feb. 23, 2010) (quoting and citing <u>Haynes</u>, 32 Cal. 4th at 1207-09).

In the Policy, on page 000012, there is a "Declarations" page for the "Commercial General Liability Coverage Part." (O'Hara Decl. Ex. A at 000012.) At the bottom of that page, there is a "box" titled "Forms and Endorsements." (<u>Id.</u>) The first line of text within the box, states in bold, "Forms and Endorsements applying to this Coverage Part and made part of this policy at the time of Issue" and then lists the alphanumeric designation of twenty-five endorsements. (<u>Id.</u>) One of those listed endorsements is ANF 168 (07/99), which corresponds to the Employer's Liability Exclusion Endorsement. (<u>Id.</u>) The Employer's Liability Exclusion Endorsement is located on page 000024, before the Commercial General Liability Coverage Form. The first line of text on the page, in capitalized and bolded letters, states, "**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**" (<u>Id.</u> at 000024.) Underneath that line of text, also in capitalized and bold letters, the endorsement is titled as "**AMENDMENT – EMPLOYER'S LIABILITY EXCLUSION.**" (<u>Id.</u>) The page then states "This endorsement modifies insurance provided under the following part: COMMERCIAL GENERAL LIABILITY COVERAGE PART." (<u>Id.</u>) The text of the endorsement proceeds to identify the provision of the Commercial General Liability Coverage Form that is to be replaced by the language provided in the endorsement, which is quoted in full above. (<u>Id.</u>)

While it is preferable that an endorsement be listed on the declarations page or elsewhere by its full name, rather than by its alphanumeric designation, there is no authority suggesting that alone, is sufficient to deem the Employer's Liability Exclusion Endorsement inconspicuous. Further, as in <u>Zurich</u>, "[t]he printing of the

15

endorsement is . . . clear.  At its top is the statement, in large,
[bold,] all-capital letters, that the endorsement changes the policy.
The title of the endorsement . . . [is also in] bold, all capital
letters.  The text of the endorsement is set apart on its own . . .,
is uncrowded and has no unrelated text surrounding it." Id.  While
Howard Drywall and J P Heintz appear to argue that the Employer's
Liability Exclusion Endorsement is inconspicuous because it is located
on page 24 of a 58 page policy, they have cited no authority
suggesting this placement is sufficient to render the endorsement
inconspicuous.  The endorsement is clearly labeled as such, and while
it is located on page 000024, it precedes the main body of the policy
which begins on page 000030.  Therefore, Navigators has satisfied its
burden of demonstrating that the Employer's Liability Exclusion
Endorsement is sufficiently conspicuous.  See also Palub v. Hartford
Underwriters Ins. Co., 92 Cal. App. 4th 645, 653 (2001) (finding one-
page endorsement, labeled as "Amendatory Endorsement," attached to
main body of policy, conspicuous) (abrogated on other grounds).

        "Conspicuous placement of exclusionary language is only one
of two rigid drafting rules required of insurers to exclude or limit
coverage.  The language itself must be plain and clear.  This means
more than the traditional requirement that contract terms be
unambiguous.  Precision is not enough.  Understandability is also
required." Haynes, 32 Cal. 4th at 1211 (quotations and citations
omitted).  Neither Howard Drywall nor J P Heintz have challenged the
Employer's Liability Exclusion Endorsement as being not plain or
clear.  Further, the language of the Endorsement is undeniably
"unambiguous and understandable."

In their opposition briefs, Howard Drywall and J P Heintz primarily argue "Navigators knew and/or should have known . . . that Howard Drywall expected Navigators to provide liability coverage to" J P Heintz; the Policy should be interpreted in light of Howard Drywall's subcontract with J P Heintz and Howard Drywall's reasonable expectations; and further, that Howard Drywall did not have notice of the exclusionary endorsement.

Howard Drywall submitted a declaration from Richard Howard, the president and chief executive officer of Howard Drywall, in which he declares that Howard Drywall has employed Wasserman as its broker for obtaining general commercial liability policies for more than five years. (Howard Decl. ¶ 2.) He further declares that he provided Wasserman with "copies of [Howard Drywall's] contract with J P Heintz" (Id.) In his deposition testimony, Howard states that he expected that Wasserman would obtain coverage that would satisfy his contractual obligations to J P Heintz. (Worthington Decl. Ex. A at 53.) Howard also declares that "[u]nbeknownst to [him] at the time, the 'renewal' policy for the period of December 1, 2006 to December 1, 2007 was written by a company [he] had not previously done business with: [Navigators]." (Howard Decl. ¶ 5.) Lastly, Howard declares that he "was not provided with a copy of the [Navigators] . . . policy until it was mailed to [him] by [Wasserman] . . . on May 14, 2007." (Id. ¶ 6.)

Navigators responds that the Policy was a "new" policy and not a renewal. Navigators points to page 00004 of the policy on which the policy is identified as "NEW." While Howard Drywall and J P Heintz put forward evidence demonstrating that Howard Drywall's president and CEO thought the Policy was a "renewal" and that

Wasserman labeled it as a "renewal" in a letter it sent to Howard
Drywall, Jeffrey Einhorn, Howard Drywall's insurance broker at
Wasserman who obtained the coverage, stated in his deposition that
when Howard Drywall needed to renew its insurance coverage, he "placed
the business with a different carrier." (Worthington Decl. Ex. B.)
Further, Einhorn states that Navigators is not affiliated with North
American Capacity, the insurance company that insured Howard Drywall
from February 1, 2005 to December 1, 2006. (Id.; Howard Decl. ¶ 4.)
Therefore, Howard Drywall and J P Heintz's argument that the policy
was a "renewal," is unavailing.

Howard Drywall and J P Heintz's arguments that the Policy
conflicts with Howard Drywall's reasonable expectations is similarly
unpersuasive. As explained in St. Paul Fire and Marine Ins. Co. v.
Am. Dynasty Surplus Lines Ins. Co., upon which defendants rely, "[i]f
contractual language is clear and explicit, it governs"; only if the
terms "are in any respect ambiguous or uncertain" are the "objectively
reasonable expectations of the insured" protected. 101 Cal. App. 4th
1038, 1058 (2002); see also Wolf Machinery Co. v. Ins. Co. of N. Am.,
133 Cal. App. 3d 324, 328 (1982) (stating that "[a] reading of the
authorities convinces us that the doctrine of reasonable expectation
of coverage comes into play only where there is an ambiguity present
in the policy"). "[E]vidence of the undisclosed subjective intent of
the parties is irrelevant to determining the meaning of contractual
language." Winet v. Price, 4 Cal. App. 4th 1159, 1166 n.3 (1992)
(citation omitted). Neither Howard Drywall nor J P Heintz have
identified any ambiguity in the insurance policy; they merely assert
that one of the endorsements is invalid and ineffective. Since there
is "no ambiguity [in the policy] . . . the reasonable expectation of

coverage doctrine is not applicable." <u>Wolf Machinery Co.</u>, 133 Cal.
App. 3d at 328. Further, while Howard Drywall and J P Heintz argue
that Navigators "knew or should have known" of Howard Drywall's
obligation to provide insurance to J P Heintz, neither defendant has
cited any authority suggesting that even if Navigators was aware of
Howard Drywall's subcontract with J P Heintz, it would override the
express terms of the Policy.

      Howard Drywall and J P Heintz's argument that the terms of
the subcontract should inform interpretation of the Policy also fails.
Howard Drywall and J P Heintz rely on California Civil Code section
1642 for support, which provides that "[s]everal contracts relating to
the same matters, between the same parties, and made as parts of
substantially one transaction, are to be taken together." Section
1642, however, is inapplicable here. The subcontract executed by
Howard Drywall and J P Heintz in June 2000 does not "relat[e] to the
same matters" as Howard Drywall's December 2006 insurance contract
with Navigators, nor should the two contracts be treated as "parts of
substantially one transaction." "[A]n additional insured endorsement
creates a contractual obligation that is entirely separate and apart
from any indemnification obligation that may exist in an underlying
construction contract." <u>Am. Cas. Co. or Reading, PA v. Gen. Star</u>
<u>Indem. Co.</u>, 125 Cal. App. 4th 1510, 1527 (2005). Therefore, "[t]he
policy language controls, not the subcontract language." <u>Great</u>
<u>Western Drywall, Inc. v. Interstate Fire & Cas. Co.</u>, 161 Cal. App.
4th, 1033, 1043 (2008). <u>St. Paul Fire and Marine Ins. Co.</u>, upon which
defendants again rely, is not controlling. As explained by the court
in <u>American Cas. Co.</u>, <u>St. Paul</u> "held only that we could consider the
underlying indemnity contract between the insured parties in order to

resolve an ambiguity in the language of the 'additional insured'
endorsement . . . ."  Am. Cas. Co. of Reading, P.A., 125 Cal. App. 4th
at 1528.  Since neither Howard Drywall nor J P Heintz are asserting
there is any ambiguity in the Policy, their subcontract may not be
considered in interpreting the Policy.

        Howard Drywall and J P Heintz also both argue there is a
genuine issue of material fact as to the date the "exclusion was
applicable" and "when said exclusion was amended by endorsement."  (J
P Heintz Opp'n 5:26-28; Howard Drywall Opp'n 8:13-21.)  The
"Declarations" page on 000012 of the Policy lists the "Forms and
Endorsements applying to this Coverage Part and made part of [the]
policy at the time of issue."  The Employer's Liability Exclusion
Endorsement, form ANF 168 (07/99) is listed.  Therefore, the
Employer's Liability Exclusion Endorsement was part of the Policy at
the Policy's inception.  Accordingly, Howard Drywall and J P Heintz
have not demonstrated that there is any genuine issue of material fact
concerning the effective date of the Employer's Liability Exclusion
Endorsement.

        Lastly, neither Howard Drywall nor J P Heintz has pointed to
any authority suggesting that the fact that Howard Drywall's only
received a copy of the Policy from Wasserman months after its
effective date, is relevant to the validity of the endorsement or the
Policy.

        Since the Employer's Liability Exclusion Endorsement is
conspicuous, plain and clear, it is valid and controlling.  The plain
meaning of the Employer's Liability Exclusion Endorsement operates to
exclude coverage for bodily injury claims from "an employee . . . of
any insured."  The exclusion applies "[w]hether an insured may be

liable as an employer or in any other capacity" and "[t]o any obligation to share damages with or repay someone else who must pay damages because of the injury." It is undisputed that Lopez was an employee of Howard Drywall, an insured under the Policy, and J P Heintz was named as an additional insured. Therefore, the Policy does not extend coverage to Howard Drywall for Lopez's bodily injury claim. Further, the exclusion applies to any obligation Howard Drywall may have to repay someone else for Lopez's claim, and accordingly, the Policy also excludes coverage to Howard Drywall for J P Heintz's cross-complaint. Lastly, the Policy further excludes coverage to J P Heintz, as an insured who may be liable in a capacity other than as an employer. The Employer's Liability Exclusion Endorsement, therefore, precludes coverage for J P Heintz and Howard Drywall relating to Lopez's bodily injury claim. Since there is no possibility of coverage, Navigators has no duty to defend nor indemnify either Howard Drywall or J P Heintz and is entitled to summary judgment on its claim for declaratory relief.

## V. CONCLUSION

For the stated reasons, Navigators' motion for summary judgment is GRANTED. Navigators is entitled to the declaratory judgment it seeks and has no duty to defend or indemnify either Howard Drywall or J P Heintz in the <u>Lopez</u> action. This case shall be closed.

Dated: March 17, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge